IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | | |
|---|---|---|
| WOODY JOHN NEWMAN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:13-cv-00051 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner, | ) | |
| Social Security Administration, | ) | By:    Joel C. Hoppe |
| Defendant. | ) | United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Woody John Newman brought this action for review of the Commissioner of Social Security's (the "Commissioner") decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–433, 1381–1383f. Newman asserts that the Administrative Law Judge's ("ALJ") determination of his credibility is not supported by substantial evidence and that the ALJ failed to give enough weight to the opinions of his treating physicians. Additionally, Newman argues that the medical records he submitted to this Court entitle him to a remand for consideration of new evidence.

This Court has authority to decide Newman's case under 42 U.S.C. §§ 405(g) and 1383(c)(3), and his case is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 14. After considering the administrative record, the parties' briefs, oral argument, and the applicable law, I find that the ALJ's decision is supported by substantial evidence and a remand to consider new evidence is unwarranted. I therefore recommend that the Commissioner's decision be affirmed.

1

## I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final determination that a person is not entitled to disability benefits. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

2

than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and if not (5) whether he or she can perform other work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Newman protectively filed for SSI and DIB on May 17, 2011. Administrative Record ("R.") 19. At 36 years old, he qualified as a "younger person" under 20 C.F.R. §§ 404.1563(c) and 416.963(c). R. 179. Newman had worked as a machine operator, order filler, tree trimmer, and foreman for a tree trimming service. R. 62. He alleged disability beginning March 3, 2011, because of lower back pain, back surgery, migraines, depression, anxiety, and burning and tingling in his feet. *Id.* A state agency denied his applications initially and on reconsideration. R. 19.

Newman appeared with counsel at an administrative hearing on September 11, 2012. *Id.* He testified to his prior work history, alleged impairments, and limitations in daily activities. R. 40–47. A Vocational Expert ("VE") testified to the types of jobs Newman might perform given his age, education, work history, and physical limitations. R. 51–54.

In a written decision dated November 5, 2012, the ALJ found that Newman was not disabled under the Act. R. 30. He determined that Newman had a severe impairment of status

Case 4:13-cv-00051-JLK-JCH   Document 28   Filed 10/31/14   Page 3 of 24   Pageid#: 635

post surgical intervention degenerative disc disease that did not meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 21–23. He found that Newman had the residual functional capacity ("RFC")[1] to perform light work[2] with the following qualifications: his balance was not limited; he could only occasionally stoop, kneel, crouch, and climb ramps or stairs; he should avoid vibration or hazards; and he could not crawl or climb ladders, ropes, or scaffolds. R. 23–28. With this RFC, the ALJ found Newman able to perform his past work as an order filler as generally performed. R. 28. Alternatively, the ALJ found Newman capable of performing other jobs that existed in significant numbers in the national economy. R. 29. He therefore found that Newman was not disabled and denied his applications. R. 30. The Appeals Council declined to review the ALJ's opinion, and this appeal followed. R. 1.

### III. Discussion

Newman asserts that the ALJ's determination of his credibility is not supported by substantial evidence and that the ALJ failed to give enough weight to the opinions of his treating physicians. Pl. Br. 21, 27, ECF No. 18. Additionally, Newman argues that the medial records he submitted to this Court entitle him to a remand for consideration of new evidence.[3] Id. at 28–30.

---

[1] "RFC" is an applicant's ability to work "on a regular and continuing basis" despite his or her limitations. Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *1 (Jul. 2, 1996). The RFC takes into account "all of the relevant medical and other evidence" in the applicant's record, 20 C.F.R. §§ 404.1545(a), 416.945(a), and reflects the "total limiting effects" of the person's impairments, id. §§ 404.1545(e), 416.945(e).

[2] "Light work" involves "lifting no more than 20 pounds at a time" but "frequently" lifting or carrying objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). Work in this category often requires "a good deal of standing or walking." Id. A person who can perform light work generally can also perform "sedentary" work. Id.

[3] Newman also argues that the ALJ mischaracterized the evidence by stating that he had a second surgery that improved his condition after the March 2012 car accident. Pl. Br. 25–27. In his recitation of Newman's testimony, the ALJ did incorrectly state that Newman had a second surgery after the car accident. R. 24. Later, when the ALJ recounted the medical evidence, he did not make the same mistake. R. 25–26. In fact, one of the ALJ's reasons for discounting

4

*A.      Relevant Facts*

On March 10, 2011, Newman underwent surgery for L5-S1 disk herniation. R. 271. Dr. Sandar W. Leivy, M.D., performed a left L5-S1 laminotomy and diskectomy without complication. R. 271–72. Dr. Leivy discharged Newman the following day, noting that he ambulated and used the bathroom well and retained full lower extremity strength with improved sensation. R. 279.

On April 1, 2011, Newman had his first postoperative appointment with Dr. Leivy. R. 329. He reported feeling much better than he had before surgery. *Id.* He still had left hip crest discomfort, some intermittent posterior thigh soreness, and morning stiffness that abated with walking. *Id.* Dr. Leivy observed that Newman ambulated well with a slow but steady gate and had full strength and intact sensation. *Id.* There was no spinal or paraspinal tenderness or spasm. *Id.* Dr. Leivy found some tenderness in the left sciatic notch, but pressure did not cause radiating pain or paresthesia. *Id.* Dr. Leivy discussed back mechanics and home exercises Newman could perform in lieu of formal physical therapy. *Id.*

On April 25, 2011, Dr. Leivy completed a Family and Medical Leave Act ("FMLA") Healthcare Provider Certification Form for Newman. R. 330–31. He opined that Newman would be unable to perform his job functions for two weeks, through approximately May 9, 2011. R. 330. Specifically, Dr. Leivy determined that Newman could lift no more than 20 pounds and could engage in minimal bending, twisting, climbing, and extended driving or riding in vehicles. *Id.*

---

Newman's credibility is that his treatment since his first surgery has been relatively conservative and has not required additional surgery. R. 27 ("The claimant's treatment, with the exception of his spinal surgery in March 2011, has also been relative routine and conservative. . . . Further surgery has not been undertaken . . . ."). The ALJ's misstatement had no effect upon his decision; he gave a correct account of the medical record later in his opinion and based his analysis upon an accurate perception of the facts.

5

On May 4, 2011, Newman returned to Dr. Leivy. R. 323. He reported that his buttock and leg pain had abated, but he continued to have low back pain. *Id.* Dr. Leivy observed that he ambulated well with a slow and steady gait. *Id.* Examination revealed minimal tenderness but no pain, full lower extremity strength, normal sensation except for a mild decrease along the medial shins bilaterally, and full range of motion with some lumbosacral discomfort. *Id.* Newman said he was performing the home therapy exercises and walking two to three miles a day, but was worried about being able to wear his equipment belt at work and climb trees. *Id.* Dr. Lievy wrote that Newman "has healed well from surgery and no longer has a radicular intractable pain and needs no further followup here." *Id.* Dr. Lievy released Newman from his care and directed that he remain off work until seen by his primary care physician, "who will dictate further disability." R. 337.

Also on May 4, 2011, Newman visited his primary care physician, Dr. AyoKunle Fatade, D.O.. R. 317. Dr. Fatade found moderate to severe pain on palpation of Newman's lumbar spine, but recorded normal findings from examination of Newman's range of motion, stability, muscle strength, muscle tone, thoracolumbar spine, and extremities. *Id.* He opined that Newman had the "ability to undergo exercise testing and/or participate in exercise programs." *Id.* Dr. Fatade referred Newman to physical therapy. R. 339.

On May 26, 2011, Dr. Fatade completed a disability evaluation for Newman based on the May 4, 2011 appointment. R. 332–33. He opined that Newman was unable to participate in employment and training activities in any capacity for the next twelve months due to back pain status post surgery. *Id.*

On June 6, 2011, Newman told Dr. Fatade that he suffered from pain estimated at level ten out of ten, with associated swelling, tenderness, and muscle cramps. R. 318. He reported that

6

bending and lifting made the pain worse, but walking and his medications made it better. *Id.* Dr. Fatade diagnosed Newman with chronic postoperative pain and wrote him a note on a prescription form stating, "I feel that patient is unable to perform his regular work duties anymore." R. 338. In his progress note, Dr. Fatade recorded, "excuse given from regular type of work, may seek different type of work." R. 318.

On August 8, 2011, Newman went to the Emergency Department at the Carilion Clinic. R. 290. He reported sharp and burning back pain since stepping in a two-foot hole two days before. *Id.* Physical examination revealed decreased range of motion, tenderness, pain, and spasm in his lower back. R. 291. Newman exhibited no swelling, edema, deformity, or laceration and had normal gait and coordination. *Id.* A magnetic resonance imaging scan ("MRI") showed "severe degenerative narrowing of the L5-S1 disk space," but normal spacing for other lumbar discs. R. 295. The MRI did not reveal any "fracture, loss of vertebral height, or paraspinal soft tissue swelling." *Id.* Attending physician assistant Jared S. Campbell noted that Newman's condition was stable and wrote: "Pt is in room laughing and having a good time, then Pt comes to nurse [to] say that the pain shots aren't working." R. 292. P.A. Campbell prescribed Flexeril and Medrol dose pack, instructed Newman to continue taking Percocet as prescribed, advised him to schedule an appointment with his family doctor or surgeon, and discharged him, again noting that Newman had a steady gait. R. 292–93. Attending physician Dr. Erin H. Dove, M.D., reviewed and approved of Newman's treatment. R. 290.

On October 13, 2011, Newman returned to Dr. Fatade. R. 319. He reported pain at ten out of ten, with worsening symptoms and associated aching, stiffness, soreness, tenderness, weakness, and decreased range of motion. *Id.* Dr. Fatade diagnosed him with chronic postoperative pain, scar conditions and fibrosis of skin, and chronic back pain. *Id.*

7

Newman saw Dr. Fatade again on December 12, 2011, December 19, 2011, and January 2, 2012. R. 454, 456, 458. Each time he reported pain of nine or ten out of ten with associated soreness, stiffness, swelling, tenderness, or numbness, and that his pain medications were not helping. *Id.* Physical examination found pain to palpation in the lumbar spine and reduced range of motion with pain. R. 454, 458. Dr. Fatade adjusted Newman's medications at each visit. R. 454, 456, 458.

At January 31, 2012, and February 28, 2012, visits to Dr. Fatade, Newman reported that his pain was seven out of ten and controlled with medication. R. 450–51. He reported soreness and stiffness in January, but no associated symptoms in February. *Id.*

On March 13, 2012, Newman was taken to the emergency department at Danville Regional Medical Center after he was involved in a motor vehicle accident. R. 482. He reported pain at nine or ten out of ten in his lower back, radiating to his hips and lower legs. R. 483–84. Newman also reported that he was up and walking at the accident scene. R. 482. Registered Nurse Lori A. Crouch found no signs or symptoms associated to his pain, including no deformity, no edema in his extremities, normal sensation and movement, and strong and equal bilateral pedal pulses. R. 483.

Newman received two MRIs of his spine at Danville Regional Medical Center. R. 500–03. The lumbar MRI showed a non-acute accessory ossicle, mild scoliosis, mild degenerative disk disease at L5-S1, no acute abnormalities or fractures, and no subluxations. R. 500. The cervical MRI showed no acute abnormalities, mild degenerative joint disease at C7-T1, and well-maintained disc spacing. R. 506.

Attending physician Dr. Charles S. Bibbs, M.D., recorded that Newman had mid-lumbar vertebral tenderness and no appreciable muscle spasms. R. 496. He found no acute cervical or

8

lumbar spine changes and noted that Newman ambulated in the ER without significant discomfort. R. 497. He advised Newman to see his primary care physician or a back specialist as soon as possible and discharged Newman in stable condition to routine home care. R. 498–99.

On March 21, 2012, Newman visited Jefferson Surgical Clinic. R. 433. Dr. Raymond V. Harron, D.O., examined Newman and found moderate paravertebral muscle spasm in his lumbar spine, straight leg raise positive at about 30 degrees bilaterally, no appreciable muscle atrophy, strong lower extremity motor power, and normal deep tendon reflexes. *Id.* Newman reported decreased sensation in his left lower extremity. *Id.* Dr. Harron advised Newman to treat his symptoms with ibuprofen and ice packs and ordered an MRI. *Id.* The MRI was taken on March 28, 2012, and reviewed by Dr. Harron with Newman on April 4, 2012. R. 468, 470. It showed fairly severe degenerative disc changes at L5-S1 with some bulging, but a mild or minimal effect on existing nerve roots, mild narrowing bilaterally at L5-S1 and on the left at L4-L5, and some moderate facet changes at L5-S1 and L4-L5. *Id.* Dr. Harron suggested treatment with additional surgery or an epidural steroid injection. R. 468. Newman agreed to the injection, *id.*, but did not go to his appointment to receive it, R. 467.

On March 27, 2012, Newman returned to Dr. Fatade. R. 448. He reported pain at ten out of ten, with tenderness, soreness, stiffness, numbness, muscle ache, and pain on weight bearing. *Id.* He claimed his pain had worsened after the car accident. *Id.*

On April 6, 2012, Newman visited the Carilion Clinic. R. 343–48. Physician assistant Jason A. Peery examined Newman and found that he had an antalgic gait, was tender to palpation in the lumbar region, and experienced pain with flexion and extension. R. 346. He also found intact motor strength, negative straight leg raise, normal reflexes, no atrophy or sensory deficiencies, and symmetrical range of motion in Newman's hips. *Id.* An X-ray demonstrated

9

moderate degeneration at L5-S1, normal segmentation, and no evidence of acute fracture, dislocation, or tumor. R. 346, 349. P.A. Peery also reviewed Newman's MRI dated "3/2012" and noted that it demonstrated a disc protrusion at L5-S1. *Id.* P.A. Peery suggested treatment with physical therapy, anti-inflammatories, and epidural steroid injections. R. 346.

Newman began physical therapy on April 23, 2012. R. 411–13. At his initial evaluation, Physical Therapist Linda B. Delport noted reports of pain at eight to ten out of ten, decreased range of motion in his spine, no evident abnormalities, and normal gait. R. 411. Ms. Delport thought that his potential for rehabilitation was excellent. R. 412. Newman attended physical therapy two to three times a week for the following two months. R. 352–413.

On April 27, 2012, Newman saw Dr. Fatade. R. 446. He reported that his condition was deteriorating and that it hurt to do anything, with pain at ten out of ten and getting worse. R. 446.

Therapy notes from throughout late April and early May detail that Newman was able to complete therapy activities with mild to moderate complaints of pain. R. 392–410. On May 17, 2012, Newman's physical therapist noted improved range of motion in Newman's spine. R. 392.

On May 22, 2012, Newman told Dr. Fatade that his pain was an eight out of ten and his medications helped a little with the pain, but did not adequately control his condition. R. 445. There are no notes of an accompanying physical examination. *Id.* Dr. Fatade completed another disability evaluation for Newman based on this May 22 appointment. R. 442–43. He opined that Newman could not participate in employment or training activities for the next six months because of his back pain. *Id.*

On May 24, 2012, Newman reported to physical therapist Daniel Morgan that he still had "terrible pain," but experienced relief for approximately two hours after physical therapy. R. 387. Mr. Morgan noted:

10

> Despite his complaint of pain the patient is able to complete all activities in the clinic with minimal [symptoms]. He is even doing bilateral straight leg raises on his own in between other activities. His symptoms do not appear to match his complaints as he is able to move with apparent ease in the clinic despite [complaints of] 10/10 pain.

R. 387. A therapy note from May 31, 2012, recorded further improvements in Newman's spinal range of motion, with full range in four of six categories. R. 381. Newman stopped complaining of pain in his lower extremities and reported being able to put on his socks and shoes with minimal discomfort, but also claimed he could not make his bed, stand for more than ten minutes, or drive for more than forty minutes. *Id.*

On June 7, 2012, Mr. Morgan wrote that Newman was "able to complete all therapeutic [exercises] in the clinic. He even does leg lifts on his own in between sets of assigned [exercises], which is very difficult, especially for someone with terrible back pain. Consistently, symptoms do not match complaints." R. 376. Newman's remaining physical therapy notes record that he completed exercises with minimal complaints of pain or difficulty and "minimal grimaces," R. 364, 370, 373, and that he reported a "slight decrease in pain and difficulty related to activity," R. 361.

On June 21, 2012, and July 18, 2012, Newman told Dr. Fatade that his pain was eight out of ten, but his medication helped ease the pain. R. 436, 440. Dr. Fatade wrote that Newman's condition was "controlled with medication" and he was doing well with diet and exercise. *Id.*

On June 28, 2012, Newman had his final physical therapy appointment. R. 354–56. Newman demonstrated full spinal range of motion in all categories and had decreased tenderness to palpation across the spine compared to his initial evaluation. R. 354, 411. Ms. Delport recorded that Newman ambulated with a "slightly guarded manner" and reported pain from his low back to left heel, but was "able to get on/off the bed with no compensatory motions or facial

grimaces." R. 356. She noted that Newman had increased the amount of time he could walk from 30 to 40 minutes to 51 to 60 minutes. *Id.* Ms. Delport concluded that Newman "made minimal gains during the treatment." *Id.*

On July 11, 2012, Newman saw Dr. Jonathan Carmouche, M.D., at the Carilion Clinic. R. 416. Dr. Carmouche recorded that Newman had "severe degeneration at L5-S1 and a residual disc herniation at this level as well," and had done well post surgery until his recent motor vehicle accident. R. 418. He also wrote that Newman had fairly good short-term relief from an epidural steroid injection and minimal relief from physical therapy. *Id.* Physical examination showed tenderness to palpation in the midline, pain with flexion and extension, an antalgic gait, balanced posture, symmetric range of motion in the hips, negative straight leg raises, intact motor function, and no atrophy or sensory deficits in the lower extremities. R. 417. Newman expressed that he wanted to avoid surgery if possible, and Dr. Carmouche recommended another epidural steroid injection and continuation of physical therapy. *Id.*

Newman described his activities of daily living in his application paperwork. *See* R. 224–31. He is slow getting dressed, makes simple meals daily, and makes his bed two or three times per week. R. 225–26. His son and daughter do the house work. R. 226. He walks outside daily, but needs to stop and rest after approximately 300 yards. R. 227, 229. He shops for groceries every two weeks and fishes once or twice a month. R. 227–28.

At his administrative hearing, Newman testified that he experiences constant pain in his lower back that radiates into his legs. R. 40–41. He said he could stand for five or ten minutes, walk 300 to 400 feet at a time, and is "not able to sit long at all." R. 42–43. He said he sometimes has numbness in his hands and can lift five to ten pounds. R. 43–44. He lives with his girlfriend and his teenage daughter. R. 44. He testified that he has difficulty sleeping and lies down four or

five times a day. R. 45. Most days, he goes walking with his daughter at places where he can rest every couple hundred feet. R. 46. He said that he cannot walk long enough to shop for groceries and that others shop for him. R. 47.

Newman testified that his pain lessened after his surgery, but did not completely go away. *Id.* He said that his car accident reversed any progress he had made and that steroid injections were not helpful. R. 48.

B.    *Analysis*

1.    *Credibility*

Once the claimant has shown the existence of an impairment that could reasonably be expected to produce the alleged pain or other symptoms, the ALJ may not dismiss a claimant's testimony regarding the intensity and persistence of those symptoms "solely because the available objective medical evidence does not substantiate" those statements. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *Hines v. Barnhart*, 453 F.3d 559, 563–64 (4th Cir. 2006); *Craig*, 76 F.3d at 595. Thus, on the second step, subjective evidence alone may suffice to establish that pain or other symptom is disabling. *Hines*, 564 F.3d at 564–65. However, a claimant's "symptoms, including pain, will be determined to diminish [his or her] capacity for basic work activities . . . to the extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

Provided he stays within these bounds, "[i]t is the province of the ALJ to assess the credibility of . . . a claimant." *Ratliff v. Barnhart*, 580 F. Supp. 2d 504, 517 (W.D. Va. 2006). The ALJ must articulate "specific reasons for the [credibility finding]," and these reasons must be "supported by the evidence in the case record." SSR 96-7p, 1996 WL 374186, at *2. The

13

ALJ's reasons "must be sufficiently specific to make clear" to the claimant and the reviewing court how the ALJ weighed the statements and why. *Id.* at *4; *Dunn v. Colvin*, 973 F. Supp. 2d 630, 639 (W.D. Va. 2013). Reviewing courts should accept an ALJ's credibility finding absent "exceptional circumstances." *See Bishop v. Comm'r of Soc. Sec.*, ___ F. App'x ___, 2014 WL 4347190, at *2 (4th Cir. Sept. 3, 2014) (per curiam) (citing *Edelco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997)). "Exceptional circumstances include cases where a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." *Edelco*, 132 F.3d at 1011; *cf. Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citing *Craig*, 76 F.3d at 589); *Dunn*, 973 F. Supp. 2d at 640 ("[T]he question for the Court is whether the ALJ applied the proper legal standard in assessing Plaintiff's credibility, and whether the ALJ's decision is supported by substantial evidence.").

The ALJ gave two primary reasons for not fully crediting Newman's statements about the intensity, persistence, and limiting effects of his symptoms: treatment records, including diagnostic studies, did not corroborate severe symptoms, and Newman's treatment since his surgery was relatively routine and conservative. R. 27.

The medical records contain many physical examinations and diagnostic studies of Newman, including multiple X-rays and MRIs. These consistently returned mild to moderate findings on most categories of examination. Newman was repeatedly found to have good range of motion, full motor strength, no atrophy, and full or nearly full sensation in his lower extremities.

Newman claims that his condition worsened after his car accident in March of 2012. R. 48. As the ALJ correctly noted, contemporaneous medical examinations are at odds with Newman's allegations. R. 27. The emergency department nurse reported that Newman was up

14

and walking at the accident scene. R. 483. She found no signs or symptoms associated with his complaints of pain, including no deformity, no edema in his extremities, normal sensation and movement, and strong and equal bilateral pedal pulses. *Id.* MRIs and an X-ray of his spine showed mild to moderate degenerative disc disease with no acute abnormalities or fractures. R. 346, 500, 506. An MRI taken on March 28, 2012, showed fairly severe disc degenerative changes at L5-S1 with some bulging, but a mild or minimal effect on existing nerve roots. R. 468. In April and May, Newman was able to complete physical therapy exercises with minimal complaints of pain and even performed extra exercises. R. 378–413. Observing Newman's movement and capacity for exercise, including doing leg lifts between exercises, his physical therapist twice commented that Newman's activities did not match his complaints of pain. R. 376, 387.

Since his initial surgery, Newman's care has been relatively routine and conservative, as noted by the ALJ. R. 27. Following the car accident in March 2012, Newman has been treated with pain medication, physical therapy, and epidural steroid injections and has not had a second surgery. He told his physical therapist that he had a slight decrease in pain and difficulty relating to activity. R. 361. Notes indicate that over two months of therapy, Newman developed full spinal range of motion in all categories and had decreased tenderness to palpation across the spine. R. 354, 411. In June and July 2012, Dr. Fatade reported that Newman was doing well with diet and exercise and his condition was controlled with medication. R. 436, 440. Also in July 2012, Dr. Carmouche recorded that Newman had fairly good short-term relief from an epidural steroid injection and minimal relief form physical therapy. R. 418.

The ALJ did not completely disregard Newman's statements of pain and symptoms. He determined that Newman had the RFC to perform light work with restrictions that were more

15

stringent than those proposed by the state agency physicians or Newman's own surgeon, Dr. Leivy. *See* R. 28, 330. The ALJ found that the record did not support Newman's statements that his pain and symptoms were fully debilitating. The ALJ gave specific reasons why he discounted Newman's credibility, and these reasons are supported by substantial evidence.

>    2.    *Opinion Weight*

An ALJ must consider and evaluate all opinions from "medically acceptable sources," such as doctors, in the case record. 20 C.F.R. §§ 404.1527, 416.927. In determining what weight to afford a doctor's opinion, the ALJ must consider all relevant factors, including whether the doctor examined the claimant, the relationship between the doctor and the claimant, the degree to which the opinion is supported or contradicted by other evidence in the record, and whether the doctor's opinion pertains to his area of specialty. *See Bishop*, 2014 WL 4347190, at *1 (citing *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005)).

Opinions from physicians who have treated the patient are generally afforded more weight because treating sources are "most able to provide a detailed longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *accord Hines*, 453 F.3d at 563. An ALJ must give a treating source opinion "controlling weight" to the extent that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in the record." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Even when a treating source's opinion is less than "well-supported" by diagnostic techniques, it is still entitled to a measure of deference. *Tucker v. Astrue*, 897 F. Supp. 2d 448, 465 (S.D. W. Va. 2012) (citing SSR 96-2p). However, an ALJ may reject a treating physician's opinion in whole or in part if there is "persuasive contrary evidence"

in the record. *Hines*, 453 F.3d at 563 n.2; *Mastro*, 270 F.3d at 178; *Tucker*, 897 F. Supp. 2d at 465. When an ALJ gives less than controlling weight to a treating physician's opinion, he must specify how much weight he gives the opinion and offer "good reasons" for that decision. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The ALJ disregarded part of the opinions of Newman's treating physicians, Dr. Fatade and Dr. Leivey.[4] The ALJ accepted the doctors' determination that Newman could not perform his past work as a foreman for a tree service company and their limitations on his movement, but rejected any conclusion that he was unable to perform regular work or participate in employment and training activities. R. 28. He afforded the opinions "minimal weight" overall because they appeared "to be based on the claimant's subjective complaints" and were "otherwise inconsistent with the weight of the evidence of record as a whole, including the minimal findings on examination and diagnostic testing." *Id.*

Dr. Leivy completed an FMLA Healthcare Provider Certification Form on April 25, 2011, R. 330–31, having last examined Newman on April 1, 2011, R. 330. During that examination, Newman ambulated well, had full strength and intact sensation in his lower extremities, had no paraspinal tenderness or spasm, and had some tenderness in his left sciatic notch that did not radiate pain when pressed. *Id.* Newman related that he felt "much better," with only some discomfort, soreness, and stiffness that abated with walking. *Id.* Dr. Leivy suggested that Newman engage in physical therapy exercises at home. *Id.* Based on these findings, Dr. Leivy opined that Newman could not return to his regular work activities for two weeks, could lift no more than 20 pounds, and could engage in minimal bending, twisting, climbing, and extending driving or riding in vehicles. R. 330.

---

[4] The ALJ mistakenly attributed Dr. Leivy's opinion to Dr. Fatade. R. 28. As both doctors were treating physicians and are evaluated with the same standard, his error was harmless.

Dr. Leivy completed a form for the FMLA, which provides temporary leave from current employment due to medical necessity, not leave from all employment. *See generally* 29 U.S.C. § 2612. Dr. Leivy opined that Newman could not engage in his regular work activities for two weeks; he did not say Newman is unable to engage in any work activity permanently.

Furthermore, the ALJ's determination was ultimately more restrictive than Dr. Leivy's opinion. He found that Newman was permanently unable to return to his previous position as a tree service foreman, and in his RFC finding, he even assigned more stringent restrictions upon Newman's abilities than did Dr. Leivy. R. 23, 28. Consequently, Dr. Leivy's opinion does not undermine the ALJ's more restrictive RFC determination.

Dr. Fatade completed two disability evaluations for Newman to submit to state agencies. His first was based upon a physical examination he performed on May 4, 2011. R. 332. At that examination, Dr. Fatade found moderate to severe pain on palpation of Newman's lumbar spine, but recorded normal findings from examination of Newman's range of motion, stability, muscle strength, muscle tone, thoracolumbar spine, and extremities. R. 317. Dr. Fatade stated in his treatment note that Newman had the "ability to undergo exercise testing and/or participate in exercise programs." *Id.* Based upon this examination, Dr. Fatade opined that Newman was unable to participate in employment and training activities in any capacity for the next twelve months because of back pain. R. 332.

Dr. Fatade's treatment note and disability opinion are directly contradictory. He suggests that Newman engage in exercise programs at the same time that he says he is unable to participate in any employment or training activity. The contemporaneous record provides significantly more support for the former conclusion. Dr. Fatade's physical examination noted mostly normal findings. R. 317. Newman also saw Dr. Leivy on May 4, 2011, the same day Dr.

18

Fatade completed his evaluation. R. 323. Dr. Leivy found minimal issues upon examination of Newman's gait, strength, sensation, and range of motion. *Id.* Newman told Dr. Leivy that his buttock and leg pain had abated, he was performing physical therapy at home, and he walked two to three miles a day. *Id.* Dr. Lievy wrote that Newman "has healed well from surgery and no longer has a radicular intractable pain and needs no further followup here." *Id.*

Dr. Fatade's second opinion was based upon an appointment on May 22, 2012. R. 442. The treatment note from that appointment does not contain findings from a physical evaluation; it only notes that Newman said his pain was an eight out of ten and his medications were not helping. R. 445. Dr. Fatade opined that Newman could not participate in employment or training activities in any capacity for the next six months. *Id.*

Contemporary evidence again contradicts Dr. Fatade's opinion. Therapy notes from late April and early May 2012 state that Newman was able to complete therapy activities with mild to moderate complaints of pain. R. 392–410. On May 17, 2012, a physical therapist noted improved range of motion in Newman's spine. R. 392. On May 24, 2012, a physical therapist noted that Newman was completing extra leg lifts on his own in between prescribed sets. R. 387. The therapist wrote that "[h]is symptoms do not appear to match his complaints as he is able to move with apparent ease in the clinic despite [complaints of] 10/10 pain."[5] *Id.* A therapy note from May 31, 2012, recorded further improvements in Newman's spinal range of motion, with full

_____

[5] Physical therapists are not "acceptable medical sources" and cannot give medical opinions about the applicant's condition. *See Adkins v. Colvin*, 4:13cv24, 2014 WL 3734331, at *3 (W.D. Va. July 28, 2014) (Kiser, J.); *Craig*, 76 F.3d at 590 (noting that a physical therapist is not an "acceptable medical source"). They can, however, provide valuable information, including "evidence to show the severity of an impairment, and how it affects an individual's ability to work." *Adkins*, 2014 WL 3734331, at *3 (citing 20 C.F.R. § 404.1513(d)). The physical therapist's observations of Newman's exercise activities are not medical opinions, but constitute important information that inform the assessment of Newman's functional capabilities.

range in four of six categories. R. 381. Newman stopped complaining of pain in his lower extremities and reported being able to put his socks and shoes on with minimal discomfort. *Id.*

Dr. Leivy's opinion does not contradict the ALJ's RFC determination. Both of Dr. Fatade's opinions are undermined by "persuasive contrary evidence" in the record. Moreover, as the ALJ accurately noted, R. 28, Dr. Fatade's conclusory opinions are based almost exclusively on Newman's subjective complaints of pain—complaints the ALJ reasonably determined were less than credible. The ALJ specified how much weight he gave to Newman's treating physicians, he identified the reasons for his decision, and his reasons are supported by substantial evidence.

### 3. New Evidence

Newman submitted additional medical records with his appeal to this Court.[6] On September 25, 2013, he saw Dr. Carmouche at the Carilion Clinic. Pl. Br. Ex. 2. Newman reported lower back pain radiating to both legs with associated numbness and tingling. *Id.* at 2. He said he had no relief from epidural injections or physical therapy and denied any lower extremity weakness. *Id.* Dr. Carmouche noted that his treatments thus far had included "time, rest, heat, [medication], muscle relaxants, narcotic analgesics and Physical Therapy." *Id.* The majority of the note afterwards is a word-for-word copy of the note from July 11, 2012. *Compare id.* at 2, *with* R. 417. After the copied text, Dr. Carmouche wrote that he recommended physiatry and pain management. Pl. Br. Ex. 2, at 2. Dr. Carmouche also referred Newman to a hip specialist based on his report of bilateral groin pain. *Id.*

---

[6] In his brief, Newman states that he submitted two of these records to the Appeals Council. Pl. Br. 29. Neither his brief to the Appeals Council nor its denial of review refer to this evidence or list it as an exhibit. *See* R. 1–4, 262–63. I therefore evaluate all the evidence as if it were submitted for the first time to this Court.

20

On October 17, 2013, Newman saw Dr. Michael W. Wolfe, M.D., about his hip. Pl. Br. Ex. 3. Newman reported pain "basically with any movement of anything," but when Dr. Wolfe manipulated his hips he did not seem to have any limitation or pain in his groin. *Id.* at 4. An X-ray showed mild superior hip joint space narrowing bilaterally. *Id.* at 5. Dr. Wolfe concluded: "I do not believe there is any indication for hip surgery. He is not interested in considering any injections." *Id.*

Newman also submitted additional evidence accompanying a motion that, according to the relief requested, I will treat as a motion to remand. *See* Pl. Mot. for Submission of Add'l Evid., ECF No. 24. On September 3, 2014, Newman returned to the Carilion Clinic and saw Physician's Assistant Allen W. Crowder. *See id.* Ex. 2, at 3. An X-ray showed degeneration and hypertrophic facet joints at L2-L3, L3-L4, L4-L5, and L5-SI. *Id.* It also showed normal segmentation and no acute fracture, dislocation, or tumor. *Id.* P.A. Crowder and Newman discussed the possibility of additional surgery. *Id.*

On October 7, 2014, Newman saw Dr. Carmouche, who wanted to conduct an electromyography[7] to check for permanent nerve damage. *Id.* Ex. 1, at 2. He stated that if Newman did not improve, he would offer additional surgery. *Id.*

Sentence six of 42 U.S.C. § 405(g) allows a court to remand for the consideration of additional evidence only if the evidence is new and material and good cause exists for its late submission. *See* 42 U.S.C. § 405(g). "Evidence is new within the meaning of this section if it is not duplicative or cumulative." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991); *see also Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985). "Evidence is

---

[7] Electromyography is "a diagnostic procedure to assess the health of muscles and the nerve cells that control them." Mayo Clinic, *Tests and Procedures: Electromyography (EMG)*, http://www.mayoclinic.org/tests-procedures/electroconvulsive-therapy/basics/definition/prc-20014183 (last visited Oct. 29, 2014).

material if there is a reasonable possibility that the new evidence would have changed the outcome." *Wilkins*, 953 F.2d at 96. A component of materiality is that the evidence relates back to the period on or before the ALJ's decision. *Dunn*, 973 F. Supp. 2d at 642 (citing *Wilkins*, 953 F.2d at 96). In addition, the claimant must show good cause for his or her failure to submit the evidence when the claim was before the Commissioner and "must present the remanding court at least a general showing of the nature of the new evidence." *Owens v. Astrue*, No. 7:09cv263, 2010 WL 3743647, at *4 (W.D. Va. Sept. 22, 2010) (citing *Borders*, 777 F.2d at 955).

Newman's additional evidence is not material. The first note from Dr. Carmouche contains the same complaints and mild findings as previous records. It demonstrates that Newman has continued to treat his back condition with relatively conservative measures. The examination of Newman's hip produced complaints of pain, but good range of motion and mild diagnostic findings. These notes are substantially similar to many already in the record and, therefore, it would be unreasonable to conclude that they would have had an effect upon the ALJ's decision.

The X-ray depicts a worsening condition; it showed degenerative changes at three locations in Newman's spine that previous diagnostic tests had not identified. It was, however, taken nearly two years after the ALJ issued his opinion. No treatment notes or medical opinions indicate that this X-ray depicts Newman's condition at the relevant time; in fact, the lack of similar findings in previous X-rays and MRIs indicates these deficiencies are a more recent development. *Cf. Barts v. Colvin*, 4:13cv23, slip op. at 21–22 (W.D. Va. July 3, 2014) (Hoppe, M.J.) (finding post-dated imaging studies immaterial where they contained the "first indication" that claimant suffered "possible" functional loss related to alleged back pain), *adopted by* 2014 WL 3661097 (July 22, 2014) (Kiser, J.). The X-ray does not relate back to the period on or

before the date of the ALJ's decision and is consequently immaterial to this application. Accordingly, none of the medical records submitted by Newman constitute "new evidence." If Newman's condition has deteriorated since November 6, 2012, he can submit a new application. *See Dunn*, 973 F. Supp. 2d at 643 (citing *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008) ("If a social security claimant develops additional impairments or those impairments worsen after his first application for benefits, the proper recourse is to submit a new application.").

## IV. Conclusion

The ALJ applied the correct legal standards, substantial evidence supports his factual findings, and a remand to consider new evidence is unnecessary. Therefore, I **RECOMMEND** that this Court **DENY** Newman's Motion for Summary Judgment, ECF No. 17; **DENY** his Motion for Submission of Additional Evidence, ECF No. 24; **GRANT** the Commissioner's Motion for Summary Judgment, ECF No. 19; **AFFIRM** the Commissioner's final decision; and **STRIKE** this case from the active docket.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

23

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: October 31, 2014

Joel C. Hoppe
United States Magistrate Judge