IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| WOODY JOHN NEWMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:13-cv-00051 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAROLYN COLVIN, | ) | By: Hon. Jackson L. Kiser |
| Acting Commissioner, | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

Before me is the Report and Recommendation ("R & R") of the United States Magistrate Judge recommending that I grant the Commissioner's Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment, deny Plaintiff's Motion for Submission of Additional Evidence, and affirm the final decision of the Commissioner. The R & R was filed on October 31, 2014, and Plaintiff Woody John Newman ("Plaintiff") filed objections on November 17, 2014. The Commissioner responded on November 21, 2014, and the matter is now ripe for review. See Fed. R. Civ. P. 72(b)(2). After careful review and consideration, and for the reasons stated below, I will overrule Plaintiff's objections, adopt the R & R of the Honorable Joel C. Hoppe in part, grant the Commissioner's Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment, and affirm the final decision of the Commissioner.

I. **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On May 17, 2011, Plaintiff filed an application for a period of disability insurance benefits pursuant to Title II of the Social Security Act ("the Act"), and supplemental security

income pursuant to Title XVI.[1]  See 42 U.S.C. §§ 401–433, 1395−1395ccc.  (See R. 177−190.) In his application, Plaintiff alleged that he had been disabled since March 3, 2011, due to a combination of: low back pain, migraines, anxiety, burning and tingling in his feet, and depression.  (R. 182.)  The Commissioner denied Plaintiff's claims initially on August 10, 2011, and again upon reconsideration on November 1, 2011.  (See R. 16;89–90; 104.)

On September 22, 2012, Plaintiff appeared with his attorney before Administrative Law Judge Marc Mates ("the ALJ").  (R. 16.)  Vocational expert Gerald K. Wells and Plaintiff both testified at the hearing.  (R. 39–55.)  In a written decision dated November 5, 2012, the ALJ determined that Plaintiff was not disabled within the meaning of the Act.  (R. 19–30.)  He found that Plaintiff has "degenerative disc disease status-post surgical intervention."  (R. 21–22 (citing 20 C.F.R. §§ 404.152(c), 416.920(c)).)  Although Plaintiff alleged disability due to anxiety, the ALJ noted that Plaintiff's treatment notes "indicate that his affect has been essentially normal" while taking his prescribed Xanax.  (R. 21.)  As such, the ALJ determined that Plaintiff's anxiety was nonsevere.  (Id.)  He found that Plaintiff did not have an impairment or combination or impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 23 (citing 20 C.F.R. §§ 404.1520(c), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).)

After consideration of the entire Record, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), subject to the following limitations: (1) he cannot climb ladders/ropes/scaffolds; (2) he cannot crawl; and (3) he must avoid even moderate exposure to vibrations or hazards.  (R. 23.)  The ALJ found that Plaintiff may, consistent with his limitations, occasionally climb

---

[1] Although the ALJ listed Plaintiff's application date as April 27, 2010 (see R. 11), Plaintiff's application was actually completed by phone on June 1, 2010 (see R. 123−131).  Plaintiff was contacted on April 27, 2010, about scheduling an appointment to apply for benefits.  (See R. 121.)

- 2 -

ramps/stairs, stoop, kneel, and crouch, and that his balance is not limited. (Id.) The ALJ determined that Plaintiff was capable of performing past relevant work as an order filler, a position that does not require the performance of work-related activities precluded by Plaintiff's RFC. (R. 28.) Accordingly, he concluded that Plaintiff was not disabled within the meaning of the Act. (R. 29.) The Appeals Council denied Plaintiff's request for review, and the decision of the ALJ became the final decision of the Commissioner on July 31, 2013. (R. 1–3.)

On September 6, 2013, Plaintiff filed suit in this Court to challenge the final decision of the Commissioner. (Compl. [ECF No. 1].) Pursuant to 28 U.S.C. § 636(b)(1)(B), I referred the case to the United States Magistrate Judge for consideration.[2] Plaintiff and the Commissioner filed cross-motions for summary judgment. (Pl.'s Mot. Summ. J., April 22, 2014 [ECF No. 17]; Def.'s Mot. Summ. J., May 27, 2014 [ECF No. 19].) On October 31, 2014, Judge Hoppe filed his Report and Recommendation, recommending that I affirm the final decision of the Commissioner. (R & R, Oct. 31, 2014 [ECF No. 28].) On November 17, 2014, Plaintiff filed objections to the R & R. (Pl.'s Obj., Nov. 17, 2014 [ECF No. 29].) The Commissioner responded (Def.'s Resp. in Opp. to Pl.'s Obj., Nov. 21, 2014 [ECF No. 30]), and the matter is now ripe for review.

## II.   STANDARD OF REVIEW

Congress has limited the judicial review I may exercise over decisions of the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. See 42 U.S.C. § 405(g) (2014); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). The Fourth Circuit has long defined substantial evidence as "such relevant evidence

---

[2] The case was initially referred to the Honorable Robert S. Ballou on February 4, 2014 [ECF No. 11], and then later referred to the Honorable Joel C. Hoppe on February 24, 2014 [ECF No. 14].

as a reasonable mind might accept as adequate to support a conclusion." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In other words, the substantial evidence standard is satisfied by producing more than a scintilla but less than a preponderance of the evidence. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527–404.1545 (2014); see Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (noting that it is the role of the ALJ, not the vocational expert, to determine disability). The Regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. 20 C.F.R. §§ 404.1527, 416.927 (2014). Unless the decision lacks substantial evidence to support it, the ultimate determination of whether a claimant is disabled is for the ALJ and the Commissioner. See id. §§ 404.1527(e), 416.927(e); Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then I must affirm the Commissioner's final decision. Laws, 368 F.2d at 642. In reviewing the evidence, I must not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [my] judgment for that of the Secretary.[3]" Mastro, 270 F.3d at 176 (quoting Craig, 76 F.3d at 589).

### III. DISCUSSION

#### A. *The ALJ's credibility determination is supported by substantial evidence*

Plaintiff first objects to Judge Hoppe's conclusion that the ALJ's holding that Plaintiff was not entirely credible was supported by substantial evidence. "Reviewing courts owe

---

[3] Or the secretary's designate, the ALJ. See Craig, 76 F.3d at 589 (quoting Walker, 834 F.2d at 640).

deference to factual findings, assessing them only to determine whether they are supported by substantial evidence. When factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997) (quoting NLRB v. Air Products & Chemicals, Inc., 717 F.2d 141, 145 (1951)). "Exceptional circumstances include cases where 'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Environmental Servs., Inc., 5. F3d 923, 928 (5th Cir. 1993)). Accord Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (4th Cir. 2014).

The ALJ gave three reasons for not fully crediting Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms. First, the ALJ noted, "Treatment records, including diagnostic studies, do not corroborate the severity of symptoms and limitations alleged." (R. 27.) The ALJ noted that Plaintiff's clinical findings "have also been suggestive of relatively minor abnormalities, overall," and noted that Plaintiff's lack of deficiencies in a range of areas "seems at odds with his allegations of difficulty standing and walking more than five to ten minutes at a time." (Id.)

Second, the ALJ highlighted the fact that Plaintiff's treatment, with the exception of spine surgery in March 2011, had been "relatively routine and conservative." (Id.) Despite the surgery, Plaintiff's records indicate a mild course of treatment and relatively little use of pain medication, except for the pain medication prescribed by his primary care physician. Moreover, Plaintiff indicated that the pain medication was "helping to ease his pain, and [the medication was] noted to be controlling his condition." (Id.; see also R. 450.)

Finally, the ALJ noted that "[r]ecord inconsistencies also detract from [Plaintiff's] credibility." (R. 27.) Several of Plaintiff's testimonial statements contradict his medical records.

For example, although Plaintiff testified that he could only walk 300-400 feet before he needs to sit, he told Dr. Leivy (his orthopedic surgeon) that he was walking two to three miles per day. (Compare R. 42 with R. 323.)

On review, it is not my place to substitute my judgment for the ALJ's. See Mastro, 270 F.3d at 176 (quoting Craig, 76 F.3d at 589). If I would have come to a different conclusion about Plaintiff's credibility, that is not a basis for upsetting the ALJ's determination. Rather, if the ALJ's decision is supported by more than a scintilla of evidence, it must be affirmed. On that standard, I cannot say that the ALJ's decision—on the Record before me—was "unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." NLRB v. McCullough Environmental Servs., Inc., 5. F3d 923, 928 (5th Cir. 1993). Because the Record offers support for the ALJ's decision, Plaintiff's objection will be overruled.

B. *The ALJ's RFC determination is supported by substantial evidence*

Next, Plaintiff contends that the ALJ erred by assigning an RFC that was less restrictive than the one imposed by Dr. Leivy, Plaintiff's surgeon.[4] First, it is the job of the ALJ to assign an RFC, *not* the Plaintiff's treating physician. As one district court has recently stated, "a treating physician's opinion can never bind the ALJ on issues reserved to the ALJ, such as a claimant's RFC or whether a claimant is able to work Theses decisions are solely the responsibility of the ALJ because they are administrative findings that are dispositive of a case; they are not medical issues." Brady v. Colvin, Case No. 2:14-0265, 2015 WL 1133611, at *9 (S.D.W. Va. Mar. 12, 2015); see also Felton-Miller v. Astrue, 459 F. App'x 226, 230 (4th Cir.

---

[4] I assume this is the basis of Plaintiff's objection. His filing to this court states: "The Court erred in finding the ALJ's RFC determination is more restrictive than the opinions of treating physician Dr. Leivy." (Obj. pg. 3, Nov. 17, 2014 [ECF No. 29].) If the ALJ's RFC is "more restrictive" than the treating physician's opinion, that means the ALJ concluded that Plaintiff was capable of fewer tasks than his own physician. Such a conclusion would be *better* for Plaintiff in determining whether could physically perform the tasks associated with employment.

- 6 -

2011) (per curiam) (unpublished) (noting that the RFC "is an administrative assessment made by the Commissioner based on all the relevant evidence in the case record."). The fact that the ALJ's opinion on an issue that is reserved exclusively to him differs from Plaintiff's physicians is not grounds to upset the ALJ's determination. Rather, so long as the ALJ's RFC determination is supported by substantial evidence, it will stand.

Here, the ALJ concluded that Plaintiff had the RFC to perform light work with some limitations. (See R. 23.) "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2014). In his RFC, the ALJ precluded Plaintiff from climbing ladders, ropes, and scaffolds, and opined that Plaintiff could only occasionally climb ramps or stairs. (R. 23.) On Plaintiff's FMLA medical evaluation, Dr. Leivy opined that Plaintiff should be limited to lifting no more than 20 pounds with minimal bending, twisting, climbing, or extended driving or riding in a vehicle. (R. 330–31.) I fail to see how Dr. Leivy's limitations materially differ from the ALJ's RFC.

Moreover, despite what Plaintiff would have me infer, Dr. Leivy stated that Plaintiff's condition was of a limited duration. He very clearly stated that the "[p]robable duration of [Plaintiff's] condition" was only until "approximately 5/9/11." (R. 330.) Not coincidentally, that date happens to be approximately the time Dr. Leivy released Plaintiff from his care following his spine surgery. (See R. 323.) Additionally, that is around the time that Dr. Leivy reported that Plaintiff "has healed well from surgery and no longer has radicular intractable pain and needs no further followup" with Dr. Leivy. (Id.) Plaintiff offers no compelling argument

why I should interpret the clear meaning of Dr. Leivy's statement to mean that Plaintiff's medical issue was of an unlimited duration. (See Pl.'s Obj. pg. 4, Nov. 17, 2014 [ECF No. 29].)

### C. *The ALJ properly rejected Dr. Fatade's opinion regarding Plaintiff's abilities*

Plaintiff contends that Magistrate Judge Hoppe erred in concluding that Dr. Fatade's notes are "directly contradictory." (See R & R pg. 18, Oct. 31, 2014 [ECF No. 28].) Dr. Fatade suggested that Plaintiff engage in exercise programs at the same time that he opined that Plaintiff was unable to participate in any employment or training activity. Plaintiff contends that "[t]he ability to engage in a therapeutic exercise program or physical therapy is not the same as the ability to engage in substantial gainful activity eight hours per day/five days per week." (Pl.'s Obj. pg. 5.) Plaintiff's argument rests on evidence that is simply not before the Court. The nature and extent of the "exercise programs" is unknown, and the Record lacks any facts on which Plaintiff can base his argument that "exercise testing" and "participation in exercise programs" in markedly less strenuous than the "light work" to which the ALJ confined Plaintiff.. (See R. 317.)

Plaintiff next objects to the ALJ's determination that Dr. Fatade's opinion was based almost exclusively on Plaintiff's subjective complaints of pain. A review of Dr. Fatade's records, however, shows that his findings are essentially devoid of objective testing results. (See R. 311–320.) For example, rather than report on an examination of Plaintiff's range of motion, Dr. Fatade documented only that Plaintiff "reports associated symptoms of aching, stiffness, soreness, tenderness, weakness, and range of motion decrease." (R. 319.) In fact, Dr. Fatade's records only reveal that he physically examined Plaintiff on three occasions. First, on December 12, 2011, Dr. Fated reported extensive findings of a physical evaluation of Plaintiff's paravertebral muscles, ranges of motion, and neurological symptoms and functions. (See R.

458–59.) On January 2, 2012, Dr. Fatade again noted that Plaintiff experienced "[m]oderate to severe pain [during palpations] of the lumbar spine." (R. 454.) On January 31, 2012, Dr. Fatade reported findings from: a lung auscultation; palpation and auscultation of the heart; examination of the carotid arteries, abdominal aorta, femoral arteries, and pedal pulses; and pericardial friction rub.[5] (R. 451.) None of the other records from Dr. Fatade report any examination of Plaintiff or any objective medical testing. All the other records, however, rely solely on Plaintiff's subjective complaints. (See R. 311–20; 436–460.) On this Record, I must conclude that the ALJ's determination is supported by substantial evidence.

Likewise, and as a corollary to Plaintiff's objection regarding Dr. Fatade's contradictory notes, contrary evidence undercuts Dr. Fatade's opinion regarding Plaintiff's level of functioning. In April of 2012, Dr. Fatade reports that Plaintiff's pain was a ten out of ten on the pain scale. (R. 446.) The next month, it was an eight out of ten, and Dr. Fatade reported that Plaintiff would not be able to participate in employment or training activities for six months. (R. 442, 444.) Plaintiff's physical therapist at the same time, however, reported the following:

> [D]espite his complaint of pain the patient is able to complete all activities in the clinic with minimal SX. He is even doing bilateral straight leg raises on his own between other activities. His symptoms do not appear to match his complaints as he is able to move with apparent ease in the clinic despite [complaining of] 10/10 pain.

(R. 387). Thus, there is substantial evidence to support the conclusion that Dr. Fatade's opinion was not based on any objective testing, and that Plaintiff's actual level of functioning was greater than Dr. Fatade stated. As such, the ALJ did not err in rejecting Dr. Fatade's opinion regarding Plaintiff's level of functioning.

---

[5] Ausuculation refers to listening to the body with a stethoscope. 1 Attorney's Medical Advisor § 5:8 (2015). Palpation refers to examination by placing fingers on a patient's body. Id. § 15:119.

### D. *Plaintiff's new evidence is not material or relevant*

Plaintiff's final objection goes to Magistrate Judge Hoppe's conclusion that "the new evidence submitted to this Court does not warrant remand." (Pl.'s Obj. pg. 6.) "A reviewing court may remand a case to the Commissioner on the basis of new evidence if four prerequisites are met: (1) the evidence must be relevant to the determination of disability at the time the application(s) was first filed; (2) the evidence must be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her; (3) there must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant must make at least a general showing of the nature of the new evidence to the reviewing court." Miller v. Barnhart, 64 F. App'x 858, 859–60 (4th Cir. 2003) (per curiam) (unpublished) (citing Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985); 42 U.S.C. § 405(g) (2000)).

Plaintiff has provided: (1) medical records from Dr. Jonathan Carmouche dated September 25, 2013 (Pl.'s Br. in Supp. of Mot. for Summ. J. [hereinafter "Pl.'s Br."] Ex. 1, April 22, 2014 [ECF No. 18-2]; (2) medical records from Dr. Michael Wolfe dated October 17, 2013 (id. Ex. 2 [18-3]); an office note from Dr. Carmouche dated October 7, 2014 (Mot. for Submission of Additional Evid. Ex. 1, Oct. 7, 2014 [ECF No. 24-1]); and an office note from Dr. Carmouche dated September 3, 2014 (id. Ex. 2 [24-2]).[6]

The first piece of evidence—Dr. Carmouche's September 2013 records—is not material. Those records merely reiterate what previous doctors have found regarding Plaintiff's physical maladies, and there is no reason to believe that the ALJ's decision would be swayed by repition

---

[6] The two office notes from Dr. Carmouche are before me on Plaintiff's Motion for Submission of Additional Evidence [ECF No. 24]. Although the Magistrate Judge recommended denying Plaintiff's Motion for Submission of Additional Evidence, I will grant that motion and consider the evidence. As stated herein, however, that evidence does not compel me to remand the case for further proceedings.

- 10 -

of previous findings. In fact, Dr. Carmouche's findings are based on an MRI from 2012, over 18 months prior to Plaintiff's visit in Dr. Carmouche's office.

The second piece of evidence—Dr. Wolfe's records—would not have altered the ALJ's conclusions either. There is nothing of substance in Dr. Wolfe's records besides a short recitation of Plaintiff's subjective complaints of pain and Dr. Wolfe's conclusion that, "when [Dr. Wolfe] moved [Plaintiff's] hips into internal rotation [Plaintiff] does not seem to have limitation or pain in the groin." (Pl.'s Br. Ex. 1.)

The other two pieces of evidence—Dr. Carmouche's office notes from September and October 2014—do suggest that Plaintiff's condition has worsened. Interestingly, Dr. Carmouche's reviewed new x-rays which his notes indicate showed *both* degeneration *and* "hypertrophic facet joints at L2-L3, L3-L4, L4-L5, L5-S1." (Pl.'s Mot. for Submission of Additional Evid. Ex. 2.) These records suggest that Plaintiff's condition has changed since the ALJ issued his opinion on November 5, 2012.

As the Magistrate Judge correctly stated, nothing in the treatment notes (including Dr. Carmouche's previous notes) indicate that the changes in Plaintiff's spine as evidence by the x-rays relate back to the period under consideration by the ALJ. Consequently, they are not relevant to the decision at issue now. See Miller, 64 F. App'x at 859 ("[T]he evidence must be relevant to the determination of disability at the time the application(s) was first filed."). Accord Kapusta v. Sullivan, 900 F.2d 94, 97 (7th Cir. 1990) (noting that "reports postdating the hearing speak only to [the claimant's] current condition, not to his condition at the time his application was under consideration by the Social Security Administration."). "[I]f a social security claimant develops additional impairments or those impairments worsen after his first application

for benefits, the proper recourse is to submit a new application." Dunn v. Colvin, 973 F. Supp. 2d 630, 643 (W.D. Va. 2013). For this reason, the objection will be overruled.

## IV. CONCLUSION

I have reviewed those portions of the Record to which Plaintiff has made specific objections, and those objections will be overruled. I have reviewed the remainder of the Record for clear error and, finding none, I will affirm the ALJ's final decision.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record as well as to Magistrate Judge Hoppe.

ENTERED this 27th day of March, 2015.

                                              s/Jackson L. Kiser
                                              SENIOR UNITED STATES DISTRICT JUDGE